UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**DERRICK L. JONES**,            Case No. 3:10 CV 2123

    Plaintiff,                  Magistrate Judge James R. Knepp, II

   v.                          MEMORANDUM OPINION AND ORDER

**A. CRUZ, et al.**,

    Defendants.

## INTRODUCTION

This is a civil rights case brought under 42 U.S.C. § 1983 stemming from Plaintiff's alleged activities on property of the Toledo Public Schools (TPS).

The district court has jurisdiction over this case under 28 U.S.C. § 1331. The parties have consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 14).

Defendants filed a Motion for Summary Judgment. (Doc. 21). Plaintiff did not file an Opposition, or anything else for that matter, within the 30 days allowed by Local Rule 7.1(d), and has not filed anything since that time. For the reasons given below, the Court grants Defendants' Motion for Summary Judgment.

## BACKGROUND

In September and October of 2006, Plaintiff was reported by witnesses to be distributing flyers to students on the grounds of at least five TPS schools. (Doc. 21-1, at 2–3). By his own account, Plaintiff was distributing flyers to promote a "Dare to Stay Straight" program to be held at the Macomber building in downtown Toledo on October 6, 2006. (Doc. 1, at 3). According to

reports given to William Weyandt, the Supervisor of the Department of Public Safety for TPS, Plaintiff told TPS personnel who questioned him at the schools that he had been given permission to distribute the flyers by TPS Chief of Staff Crystal Ellis. (Doc. 21-1, at 1). Upon receiving these reports, Weyandt contacted Ellis' office and confirmed that no such permission had ever been given. (Doc. 10-2, at 2). Weyandt was particularly alarmed by the reports of Plaintiff telling students he was a DARE police officer (Doc. 21-1, at 1, 3), because Weyandt knew TPS had discontinued any association with the DARE program – an anti-drug program sponsored and run by law enforcement agencies – several years earlier. (Doc. 21-1, at 1).

Several witness accounts of Plaintiff at the schools indicated he wore a badge, a DARE shirt, a holster, and what appeared to be a gun. (Doc. 21-1, at 2–3). In his complaint, Plaintiff denies asserting he was a police officer and alleges he was wearing his work uniform (that of a security guard) while distributing the flyers. (Doc. 1, at 4).

On October 4, 2006, while handing out flyers, Plaintiff had an encounter at Spring Elementary School with its principal, who informed him he could not distribute flyers and needed to leave. (Doc. 21-1, at 1). The principal then reported this incident to Weyandt's office, who in turn reported it to the Toledo Police. (Doc. 21-1, at 2). The police identified the person as Plaintiff, then filed charges in the Toledo Municipal Court for criminal trespassing and impersonating a police officer. (Doc. 1, at 5). Plaintiff appeared at a hearing on October 6 and pled not guilty. (Doc. 1, at 5; Doc. 21-1, at 3). He was thereafter released on a recognizance bond. (Doc. 10-1, at 3).

That same day, Plaintiff went to the Macomber building in downtown Toledo to reserve it for his planned event that night, allegedly paying a $400 deposit to do so. (Doc. 1, at 5). He was then detained for questioning by TPS personnel about reports of his activities at another school, Pickett

2

Elementary, with Defendants Toledo Police officer Abraham Cruz and detective Jeffery Clark arriving soon thereafter. (Doc. 21-2, at 1; Doc. 21-3, at 1). The police, looking at Plaintiff's vehicle in the parking lot beside the Macomber building, observed in plain view, and then recovered, a replica Walther P99 handgun, a gun belt, mace, and two ammunition clips. (Doc. 21-2, at 1). According to Defendant Clark, Plaintiff admitted these items were his. (Doc. 21-2, at 1). Plaintiff was then arrested for the Pickett School incident. (Doc. 21-2, at 1). After receiving Plaintiff's consent to search his vehicle, Defendant Clark discovered a security enforcement badge in a black leather holder. (Doc. 21-2, at 1). According to Defendant Clark's affidavit, all funds deposited by Plaintiff at the Macomber building were returned to him after his arrest. (Doc. 21-2, at 2). All charges against Plaintiff stemming from the Spring and Pickett school events were eventually dismissed for failure to comply with speedy trial requirements and because Plaintiff was incarcerated on other charges. (Doc. 21-1, at 10, 14, 21, 28).

Plaintiff first brought this action in 2008, alleging violations of his First, Fourth, Fifth, and Fourteenth Amendment rights under 42 U.S.C. § 1983. *See Jones v. Cruz*, Case No. 3:08-CV-1444. The initial lawsuit was dismissed without prejudice by this Court for failure to prosecute. *Id.*, Doc. 38. Plaintiff now brings this lawsuit alleging the same causes of action against the same parties. The Court has already dismissed Defendant William Weyandt from the case on res judicata grounds. (Doc. 16).

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences

3

from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). This burden "may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## ANALYSIS

If a motion for summary judgment is made and supported as provided in Rule 56, the adverse party may not rest on the mere allegations in his pleading. *Celotex*, 477 U.S. at 324 (stating that the nonmoving party is required to go beyond the pleadings to designate "specific facts showing that there is a genuine issue for trial"). If the non-moving party fails to point out genuine issues of material fact, "reliance on the facts advanced by the movant is proper and sufficient." *Wardle v. Lexington-Fayette Urban County Government*, 45 F. App'x 505, 509 (6th Cir. 2002) (quoting *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)). Here, because Defendants' Motion for Summary Judgment is supported by affidavits based on personal knowledge, as provided by Rule 56(c)(4), and Plaintiff failed to oppose Defendants' Motion or file anything in response, Plaintiff has not met his burden of establishing a genuine issue of material fact. Therefore, the only question that remains is whether Defendants are entitled to judgment as a matter of law based on the facts presented in their affidavits.

Collateral Estoppel

Defendant first argues this Court's ruling in Plaintiff's initial lawsuit granting Defendant Weyandt summary judgment acts to preclude the same claims brought against the other Defendants in this case. Collateral estoppel, or issue preclusion, dictates that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation."*Montana v. United States*, 440 U.S. 147, 153 (1979). On May 14, 2009, this Court granted Weyandt summary judgment in the initial lawsuit. Case No. 3:08-CV-1444, Doc. 35. The Court's brief order noted only that the motion was unopposed, there were no disputed issues of material fact, and Weyandt was entitled to judgment as a matter of law. *Id.*

The order granting Weyandt summary judgment presumably adopted at least one of the arguments presented by Weyandt's motion, but did not specify which. In his motion, Weyandt had argued he did not violate Plaintiff's constitutional rights because there was probable cause for Plaintiff's two arrests associated with his conduct at TPS schools. Case No. 3:08-CV-1444, Doc. 24, at 23–33. However, Weyandt also argued that he personally was entitled to qualified immunity. *Id.* at 33–35. The Court did not specify which argument, if not both, carried the day. Because finding Weyandt entitled to qualified immunity does not require finding the other Defendants are so entitled, the Court's order does not necessarily adjudicate the issues of whether probable cause existed to arrest Plaintiff and whether Plaintiff's other constitutional rights were violated. Thus, collateral estoppel cannot apply to preclude these issues from being litigated against the current Defendants.

Qualified Immunity

Though 42 U.S.C. § 1983 contains no immunity provisions, the Supreme Court has read the

5

statute "in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Malley v. Briggs*, 475 U.S. 335, 339 (1986) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 418 (1976)). Accordingly, questions of immunity under § 1983 are determined primarily by common law immunities at the time the Civil Rights Act was enacted in 1871, though not all common law immunities have been incorporated into it. *Id.* Qualified immunity recognizes the burden of trial is unjustified in the face of a colorable claim that the action taken was reasonable in light of unclear law. *Will v. Hallock*, 546 U.S. 345, 353 (2006). It ensures that damages suits do not "unduly inhibit officials in the discharge of their duties" by burdening individual officers with "personal monetary liability and harassing litigation." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court addressed the question of constitutional avoidance with respect to §1983 actions involving qualified immunity. The Court allowed lower courts to, in sound discretion, deviate from the previously mandated procedure set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). *Pearson*, 555 U.S. at 236. In *Saucier*, the Court set up a two-prong process of analysis for such questions:

> First, a court must decide whether the facts that a plaintiff has alleged [or shown] make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

*Pearson*, 555 U.S. at 232 (citing *Saucier*, 533 U.S. at 201) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1991)). Following this procedure, though no longer mandatory, is often beneficial for judicial economy. *Pearson*, 555 U.S. at 236.

If there has been a constitutional violation, the inquiry into whether the law was "clearly established" turns on the "objective legal reasonableness of the action, assessed in light of the legal

rules that were clearly established at the time." *Wilson v. Layne*, 526 U.S. 603, 614 (1999). As the Court explained in *Anderson v. Creighton*, 483 U.S. 635 (1987), "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

Probable Cause

Plaintiff's § 1983 claim alleging Fourth Amendment violations rests on whether probable cause existed to arrest him. *See Fridley v. Horrighs*, 291 F.3d 867, 872 (6th Cir. 2002) ("In order for a wrongful arrest claim to succeed under § 1983, a plaintiff must prove that the police lacked probable cause."). There exists probable cause "if there is a 'fair probability' that the individual to be arrested has either committed or intends to commit a crime." *Id.* (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Probable cause requires "facts and circumstances . . . sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). The probability of criminal activity is assessed under a reasonableness standard based on an examination of all facts and circumstances known to the defendant at the time. *Crockett v. Cumberland College*, 316 F.3d 571, 580 (6th Cir. 2003). Unless there is only one reasonable conclusion possible, the existence of probable cause in a § 1983 action is a jury question. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Here, there is overwhelming undisputed record evidence supporting probable cause to arrest Plaintiff on October 6 for his activities at Pickett Elementary School for at least two crimes. The first relevant possible crime is criminal trespass:

> (A) No person, without privilege to do so, shall do any of the following:
> (1) knowingly enter or remain on the land or premises of another;

> (2) Knowingly enter or remain on the land or premises of another, the use of which is lawfully restricted to certain persons, purposes, modes, or hours, when the offender knows the offender is in violation of any such restriction or is reckless in that regard. . . .
> (B) It is no defense to a charge under this section that the land or premises involved was owned, controlled, or in custody of a public agency.

Ohio Rev. Code § 2911.21(A)–(B). The second crime is possession of a dangerous weapon in a school safety zone:

> (B) No person shall knowingly possess a deadly weapon or dangerous ordnance into a school safety zone.
> (C) No person shall knowingly possess an object in a school safety zone [if] the object is indistinguishable from a firearm, [and] the person indicates that the person possesses the object and that it is a firearm, or the person knowingly displays or brandishes the object and indicates that it is a firearm.

Ohio Rev. Code § 2923.122(B)–©).

On review of the facts known to Defendants at the time of Plaintiff's October 6 arrest, probable cause that Plaintiff committed both of these crimes at Pickett Elementary School undeniably existed. Three students at Pickett had reported being approached by an adult black male wearing a gun who introduced himself as a DARE police officer and handed them pamphlets about a dance at the Macomber building. (Doc. 21-1, at 3). As Defendants correctly point out, police may rely on the statement of a witness to a crime to establish probable cause unless there is a reason to disbelieve the witness. *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999). Here, the credibility of these witnesses has not been questioned. In fact, police found a gun belt with a replica handgun in Plaintiff's vehicle, adding to the credibility of these reports. (Doc. 21-2, at 1). In light of this, reasonable minds can only come to one conclusion: that probable cause existed to arrest Plaintiff. Therefore, Plaintiff's Fourth Amendment rights were not violated, and Defendants are entitled to qualified immunity on this claim.

First Amendment Claim

Plaintiff's complaint includes an allegation of First Amendment violations. (Doc. 1, at 1.). On review of the undisputed facts, this claim has no merit. The removal from school grounds of a trespasser reportedly carrying a gun is unquestionably allowed for security purposes, whether the trespasser was undertaking communicative activities or not. *See Lloyd Corp., Limited v. Tanner*, 407 U.S. 551, 568 (1972) ("[T]his Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech. . . . Even where public property is involved, the Court has recognized that it is not necessarily available for speaking, picketing, or other communicative activities."). Therefore, Plaintiff's First Amendment rights were not violated by the sequence of events that took place in this case, and Defendants are entitled to qualified immunity on this claim.

Fifth Amendment Claim

Plaintiff alleges Defendants violated his Fifth Amendment rights by not returning his $400 deposit to him. However, in Defendant Clark's affidavit, he asserts "all funds deposited" by Plaintiff were returned to him after his arrest. (Doc. 21-2, at 2). Plaintiff denies this in his complaint, but Plaintiff cannot rebut Clark's assertion by merely relying on the allegations in his complaint. *See Celotex*, 477 U.S. at 324. Because Plaintiff has not responded to Defendants' Motion for Summary Judgment, reliance on Defendants' facts is proper. *See Wardle*, 45 F. App'x at 509. As such, the record shows Plaintiff's money was returned. Therefore, no Fifth Amendment violation occurred, and Defendants are entitled to qualified immunity on this claim.

Tort Claims

Aside from his § 1983 claims, Plaintiff alleges various tort causes of action against Defendants. Specifically, Plaintiff seeks relief for the torts of false arrest, negligence, false

9

imprisonment, and dereliction of duty. For the same reasons as above, Defendants are entitled to judgment as a matter of law on these claims.

Under Ohio law, qualified immunity protects Defendants from liability for these torts just as it protects them from liability under § 1983. By statute, Ohio qualified immunity prevents law enforcement officers from being liable for compensatory damages "unless the officer's actions were manifestly outside the scope of the officer's employment or official responsibilities, or unless the officer acted with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code § 4506.17(J)(1). This is a more demanding and protective standard than the standard under federal law discussed above. Under no circumstances could the facts presented in this case be construed to show Defendants acted manifestly outside their responsibilities, or with malicious purpose, in bad faith, or in a wanton or reckless manner. Indeed, the officers here acted reasonably and within the scope of their official duties. Therefore, Defendants are entitled to qualified immunity on Plaintiff's state law tort claims.

## CONCLUSION

Because there was no constitutional violation, Defendants are entitled to qualified immunity on Plaintiff's § 1983 claims. Because Defendants did not act maliciously, in bad faith, wantonly, recklessly, or manifestly outside the scope of their responsibilities, they are similarly entitled to qualified immunity on Plaintiff's tort claims. Accordingly, Defendants' Motion for Summary Judgment is granted and the case is dismissed.

IT IS SO ORDERED.              s/James R. Knepp, II
                               United States Magistrate Judge